## KING v. KIRKBRIDE. (No. 2699.)

(Court of Civil Appeals of Texas. Texarkana.
May 8, 1923. Rehearing Denied
May 17, 1923.)

Principal and agent ⊗⇒123(3)—Evidence held insufficient to justify finding that grantee was bound by alleged agent's promise to assume grantor's purchase-money notes.

Evidence that a house and lot, exchanged for land conveyed by a deed, from which grantor claimed that an agreement by grantee's alleged agent that grantee would assume purchase-money notes given by grantor had been fraudulently omitted, were grantee's property, and that such agent had represented grantee in a former business transaction, *held* insufficient to justify a finding that grantee was bound by such agent's declarations.

Appeal from District Court, Hopkins County; Geo. B. Hall, Judge.   ·

Suit by W. W. Jones against T. S. Kirkbride and B. A. King. From a judgment over against defendant King, in favor of defendant Kirkbride, King appeals. Reversed and remanded.

Dial, Melson, Davidson & Brim, of Sulphur Springs, for appellant.

Connor & Ramey, of Sulphur Springs, for appellee.

HODGES, J. The appellee, Kirkbride, owned a farm of 60 acres of land near Como, in Hopkins county, on which he owed two notes of $850 each and one note of $1,300, as unpaid purchase money. The appellant, King, owned a house and lot in the city of Sulphur Springs, on which he owed $1,000 as a part of the purchase money. Kirkbride and King exchanged places. The deeds executed show that the consideration paid King, in addition to the equity in the 60 acres of land, was $500 cash, a note for $500 executed by Kirkbride, and the assumption by Kirkbride of the indebtedness of $1,000 against the property. The deed from Kirkbride to King recites a cash consideration of $1,000 paid, "and the further consideration of said B. A. King buying the property subject to the following indebtedness: Two certain notes for $850 each, maturing January 1, 1921, and January 1, 1922, respectively, and one note for $1,300, due October 1, 1920." The two $850 notes were held by W. W. Jones. In November, 1921, Jones filed this suit against Kirkbride on the two notes, and also sought a foreclosure of the vendor's lien on the tract of land. King was made a party defendant upon the general averment that he was claiming an interest in the land.

Kirkbride answered, alleging that in the contract by which he and King exchanged property King agreed to assume the payment of the notes sued on as a part of the purchase price. He also alleged that such agreement of assumption on the part of King had been fraudulently omitted from the deed executed by him to King. He further says that the trade was consummated through one Fuller, an agent for King; that Fuller agreed that King would assume such indebtedness, and had offered to prepare the deed evidencing that assumption; that he (Kirkbride), believing the deed was in proper form and in accordance with the agreement stated, signed the deed without reading it; that he did not know that the assumption of those notes had been omitted from the deed until a short time before the institution of this suit. He asked that he be awarded a judgment over against King for such a sum as he may be compelled to pay in satisfaction of the judgment rendered in favor of Jones.

King answered, denying that he had agreed to assume the debt against the land. He also denied that Fuller was his agent, or had any authority to bind him by such an agreement. He avers that the deed which he received from Kirkbride stated all the terms of the agreement upon which he purchased the land. He disclaimed any interest in the land.

The case was submitted to the jury under a general charge, and resulted in a judgment in favor of Jones for the amount of the debt sued for against Kirkbride, and in favor of Kirkbride over against King, as prayed for.

We pass over all of the assignments except that which challenges the sufficiency of the evidence to support the verdict. According to Kirkbride, he was approached by Fuller and asked how he (Kirkbride) would swap the tract of land for the house and lot. He answered, saying:

"'How do you want to swap?' and he (Fuller) said, "If you will give me $1,000 I will swap with you, and I assume indebtedness on the places.' And I told him I wouldn't do it, and Fuller left."

Later Fuller returned, and they traded upon the following terms: Kirkbride was to pay $500 and assume the indebtedness against the house and lot, and Fuller to assume the indebtedness against the land. Fuller proposed to prepare the deeds. A few days later he presented a deed for Kirkbride to sign, and another signed by King; the deeds containing the recitals previously stated.

King testified that he had not listed his land with Fuller, had not employed him to negotiate any trade with Kirkbride, did not know the terms that Fuller had proposed to Kirkbride. He was approached by Fuller to know how he would trade the house and lot for Kirkbride's equity in the land, and proposed the terms upon which the trade was finally consummated, and as recited in the deeds. He also stated that he wrote the

⊗⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

two deeds himself, and he expressed in the deeds the very terms that he had agreed on with Fuller. He denied that he ever paid Fuller any commissions, or had authorized him to represent him (King) in any such transaction.

Kirkbride and King were the only two witnesses. It devolved upon Kirkbride, in order to fix a liability against King different from that recited in the deeds, to prove that Fuller was King's agent. The only evidence tending to show such agency is the fact that it was King's property that was involved in the transaction, and Kirkbride's testimony that Fuller had represented King in a former business transaction.

We are of the opinion that this evidence was not sufficient to justify the jury in holding King bound by Fuller's declarations. The writings offered in evidence corroborated King's version of the transaction.

The judgment will therefore be reversed, and the cause remanded.